Colón Birriel, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
I
Los entonces co-demandados aquí apelantes Víctor Raimundí Construction y Royal Insurance Company of Puerto Rico, Inc. ("Royal Insurance"), acuden a este foro mediante recursos de apelación por separado, Núm. KLAN-97-00148 y Núm. KLAN-97-00163. Solicita el primero, se revoque el dictamen emitido por el Tribunal de Primera Instancia, Sala Superior de Guayama, el 23 de julio de 1996, archivado en los autos copia de su notificación el 9 de agosto de 1996. Por su parte, Royal Insurance solicita se revoque y se enmiende el referido dictamen a los efectos de eliminar la cuantía concedida al entonces co-demandante aquí apelado Raúl Ortiz y Asociados, de reducir a la suma de $6, 000 la cuantía concedida al entonces co-demandante aquí apelado José Manuel Román y eliminar la suma de $1,000 concedida por concepto de honorarios de abogado.
Posteriormente, el 14 y 19 de agosto de 1996, Royal Insurance solicitó reconsideración y determinaciones de hechos adicionales a tenor con las disposiciones de la Regla 47.2 y 43.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 47.2 y 43.3. Luego de las partes fijar sus respectivas posiciones y otros incidentes, el dictamen fue enmendado el 17 de enero de 1997, archivado en los autos copia de su notificación el 23 de enero de 1997. La enmienda fue a los efectos de que donde dijera en la sentencia Víctor Raimundí Miranda o Víctor Raimundí Construction, se deberá entender *956 Víctor Raimundí Construction y Mantenimiento Industrial. Además, deberá entenderse que Víctor Raimundí Miranda y Herminia Collazo Rivera, por sí y en representación de la sociedad de gananciales, le son solidariamente responsables a Royal Insurance, conforme lo determina la sentencia. Por último, se enmendó la partida de honorarios de abogado concedida a la tercera demandada Royal Insurance, para que el co-demandado Víctor Raimundí Construction y Mantenimiento Industrial y Herminia Collazo Rivera, por sí y en representación de la sociédad de bienes gananciales compuesta por ésta y Víctor Raimundí, le satisfaga la suma de $7,547 de honorarios de abogado por acuerdo contractual entre las partes a la co-demandada Royal Insurance. 
Atendida una moción solicitando consolidación presentada por la apelante Royal Insurance, mediante nuestra "Resolución" de 4 de abril de 1997, consolidamos el recurso Núm. KLAN-97-00148 con el Núm. KLAN-97-00163. Con el beneficio de los alegatos de las partes, los autos originales y la transcripción de la vista celebrada, resolvemos.
II
Para el año 1992, César Vázquez Navarro, en su capacidad de Presidente de General Builders Construction Corporation ("General Builders" o la "contratista"), compañía encargada de los trabajos de construcción a realizarse en un proyecto denominado Plaza Guayama en el Centro Comercial Plaza Guayama Mall, a virtud de un "Contrato de Obra" subcontrató las labores de desmonte vegetal, operaciones de corte, movimiento de tierras, relleno y otros con Víctor Raimundí Construction y Mantenimiento Industrial ("V.R.C.M.I"), quien estuvo representado en ese acto por su presidente, Víctor Raimundí y por su vicepresidente, Roberto Torres. 
Mediante el referido contrato se estipuló que, antes de comenzar las labores pactadas, V.R.C.M.I. adquiriría una fianza de ejecución de obra y pago de materiales y suplidores a favor de General Builders. A esos fines Royal Insurance expidió a favor de V.R.C.M.I. una fianza de ejecución de obra y pago de materiales y suplidores identificadas bajo el número B-09889, garantizando el trabajo a realizar a favor de General Builders, la obra conocida como Plaza Guayama. Además, Royal Insurance suscribió con Víctor Raimundí h/n/c Raymundí Construction un acuerdo denominado "General Agreement of Indemnity", mediante el cual, Víctor Raimundí y su esposa, Herminia Collazo, ambos en su carácter individual, y Víctor Raimundí, en su capacidad de comerciante, se obligaron a resarcirle a Royal Insurance las sumas de dinero que ésta tuviese que satisfacer a cualquiera que reclamara de la fianza expedida a V.R.C.M.I.
En el transcurso de las labores de V.R.C.M.I. en el proyecto Plaza Guayama, también se desempeñaron en éste, José Manuel Román Ruiz ("Román") y Raúl Ortiz y Asociados, quienes se dedicaron al alquiler de camiones para el acarreo de tierra y piedras. Alegadamente, estos servicios no le fueron remunerados. Alegando Román que contrató la prestación de sus servicios para el movimiento de tierra en el Proyecto Plaza Guayama con Víctor Raimundí Construction, y sus servicios no le habían sido pagados, demandó a éste y a su aseguradora, Royal Insurance, quien tenía expedida una póliza de seguros conocida como "Payment y Performance Bond" para el mencionado proyecto, demanda que fue presentada ante el antiguo Tribunal de Distrito, Sala de Guayama, caso Civil Núm. CD-93-579. Reclamó la suma de $8,000 por las labores realizadas, $2,000 por daños y peijuicios y $3,000 por concepto de honorarios de abogado. 
Por su parte, Raúl Ortiz y Asociados también demandó por sus trabajos realizados de movimiento de tierra en el proyecto Plaza Guayama a Víctor Raimundí Construction y a su aseguradora, Royal Insurance, quien tenía expedida una póliza de seguros como "Payment y Performance Bond." para el mencionado proyecto, demanda que fue presentada en el antiguo Tribunal Superior, Sala de Guayama, caso Civil Núm. GCD-930022. Reclamó $36,970 por trabajos realizados entre el 14 de abril de 1992 al 30 de diciembre del mismo año, más $30,000 por concepto de daños y peijuicios.
Durante la vista sobre la "Conferencia Sobre Estado Procesal del Caso", celebrada el 15 de agosto de 1994, Raúl Ortiz y Asociados enmendó su demanda a los fines de reducir los $36,970 reclamados por sus servicios a la suma de $28,795.
En esencia, en las demandas presentadas los demandantes reclamaron a Royal Insurance el pago de *957 alegados servicios prestados por ellos en el proyecto Plaza Guayama al afianzado Víctor Raimundí Construction por concepto de alquileres de camiones para el acarreo de tierra y materiales.
Por razón de que los demandantes-apelados no pudieron emplazar al afianzado Víctor Raimundí Construction, Royal Insurance presentó demandas contra terceros, en las demandas previamente radicadas, contra Víctor Raimundí Miranda, por sí y h/n/c Víctor Raimundí Construction y Mantenimiento Industrial; Herminia Collazo Rivera, por sí y en representación de la Sociedad Legal de Gananciales compuesta por Víctor Raimundí Miranda. 
Al presentar sus alegaciones responsivas, los terceros demandados, Víctor Raimundí Miranda, Herminia Collazo Rivera y la Sociedad Legal de Gananciales por ellos constituida, adujeron, en esencia, que V.R.C.M.I. no era una corporación privada autorizada a hacer negocios en el Estado Libre Asociado de Puerto Rico, que ni Román ni Raúl Ortiz y Asociados contrataron con V.R.C.M.I. sino para beneficio de un tercero por lo que ésta no les adeudaba nada, que adquirió la fianza por instrucciones de un tercero y actuando como mensajero de éste y que por no saber inglés no entendió el documento que firmó.
Dado que ambas reclamaciones, la de Román y la de Raúl Ortiz y Asociados, surgían de un mismo evento o transacción, versaban sobre los mismos hechos y la prueba testifical era común a ambos casos, el antiguo Tribunal de Distrito, Sala de Guayama ordenó el traslado de su caso Civil Núm. CD-93-579 al antiguo Tribunal Superior, Sala de Guayama para ser consolidado con el caso G CD-93-0022. Posteriormente, éste caso fue radicado con el Núm. G CD-94-0047 en el antiguo Tribunal Superior, Sala de Guayama.
Como resultado del descubrimiento de prueba, en específico de deposiciones tomadas a los demandantes, V.R.C.M.I. y los terceros demandados entendieron necesario traer como partes indispensables y necesarias a los dueños de la obra Plaza Guayama, a General Builders, a los ingenieros César y Marcos Vázquez Navarro, a Roberto Torres Amaro y a la compañía de éste, Express Equipment Rent and Sales ("Express Equipment"). Tras la oposición de Raúl Ortiz y Asociados y José Manuel Román y réplica de los terceros demandados, la solicitud para traer esas partes indispensables fue denegada por el foro de instancia. 
Así las cosas, el juicio en su fondo se celebró el 8 de febrero de 1996. Se admitieron como exhibits por estipulación cierta prueba documental; entre éstas, el:
Exhibit I Payment & Performance Bond (5 páginas).
Exhibit II Contrato de Obra suscrito entre General Builders y Victor Raymundí.
Exhibit III Estado financiero del Sr. Víctor Raymundí Construction al 30 de septiembre de 1991.
Exhibit IV Fotocopia de cheque por la cantidad de $2,000 con fecha 12 de junio de 1992 pagadero al Sr. Alfonso Román.
Román no presentó prueba documental alguna que acreditara la existencia de su deuda o que evidenciara una aceptación de deuda por parte de V.R.C.M.I. De la "Transcripción de Vista en su Fondo" ante nos, surge que el testimonio oral de éste se caracterizó como uno contradictorio, reflejando su falta de conocimiento en tomo al tiempo en que laboró en la obra y las cantidades que se le adeudaban.
Por su parte, Ortiz, en representación de Raúl Ortiz y Asociados, tampoco se acordaba de las cuantías que se le adeudaban. La factura de la cual supuestamente surgía la deuda, no había sido preparada por él sino por su hermana. Además, al ser cuestionado en cuanto a discrepancias en las cuantías que surgían de la factura, admitió no acordarse de cómo éstas se habían calculado. Esto, unido al hecho de que la factura no estaba dirigida a V.R.C.M.I. sino a Express Equipment, compañía que no era parte en el litigio, culminó en que el documento no fuera admitido en evidencia.
Contrario a la pmeba desfilada, mediante la sentencia que se dictó el 23 de julio de 1996 y que fue *958 notificada el 9 de agosto de 1996, se declaró "Con Lugar" las acciones consolidadas y se le concedió a Román y a Raúl Ortiz y Asociados $13,000.00 y $28,795.00, respectivamente, más intereses desde la radicación de la demanda y $1,000.00 para costas, gastos y honorarios de abogado. Mediante dicha sentencia también se declaró "Con Lugar" la demanda contra terceros que Royal Insurance instó contra Víctor Raimundí, su esposa Herminia Collazo Rivera y la Sociedad de Bienes Gananciales compuesta por ambos, condenándolos a pagar solidariamente todas las cantidades anteriores más $1,000.00 de costas, gastos y honorarios de abogado e intereses.
Inconforme, Royal Insurance presentó "Moción de Reconsideración". En cuanto a la parte de la sentencia que declaró "Con Lugar" la demanda contra terceros, solicitó que la misma se hiciera extensiva a V.R.C.M.I., ya que solamente era dispositiva en cuanto a Víctor Raimundí, su esposa, Herminia Collazo y la Sociedad Legal de Gananciales compuesta por ambos.
Mediante "Moción al Amparo de la Regla 43.3 de las de Procedimiento Civil Vigente", Royal Insurance solicitó determinaciones de hechos y conclusiones de derecho adicionales. Adujo que el co-demandante, Román, no presentó prueba documental alguna que acreditara su acreencia o que evidenciara una aceptación de deuda por parte de V.R.C.M.I. Añadió que el testimonio oral de Román fue conflictivo en cuanto al tiempo en que estuvo trabajando, lo que se le pagó y lo que se le debía. Impugnó la decisión del foro a quo concediéndole $13,000 a Román sin la presentación de prueba admisible que estableciera dicha cantidad y razonó que la prueba oral había logrado establecer, a lo sumo, $8,000 de deuda, de los cuales $2,000 habían sido satisfechos por lo que solamente se debían $6,000. Alegó también que, contrario a lo concluido por el tribunal, no existió contrato entre las partes.
En cuanto al representante de Raúl Ortiz y Asociados, la solicitud de reconsideración de Royal Insurance recalcó que el documento que éste intentó presentar como prueba de su acreencia no estaba dirigido a V.R.C.M.I. sino a Express Equipment. Añadió que aunque el foro de instancia le concedió $28,795, Ortiz no había logrado probar un sólo centavo de su deuda por lo que procedía enmendar la sentencia para eliminar la partida concedídale y para excluir la octava determinación de hechos, la cual copiada a la letra lee como sigue:

"8. Raúl Ortiz y Asociados, representada por el Sr. Raúl Ortiz, hizo trabajos por valor de $36,000 como producto de acarreo de tierra en el proyecto Plaza Guayama Mall."

Royal Insurance solicitó, además, que se enmendara la sentencia para que se le concedieran las sumas que los terceros demandados le adeudaban por concepto de gastos legales: $1,968 en cuanto a la reclamación de Román y $5,579 en cuanto a la de Raúl Ortiz y Asociados. Recibidas las mociones de Royal Insurance, el foro de instancia ordenó a las demás partes a fijar sus posiciones en cuanto a lo solicitado. V.R.C.M.I. y los terceros demandados comparecieron mediante "Moción en Cumplimiento de Orden" en la cual adoptaron por referencia las mociones presentadas por Royal Insurance y esgrimieron sus mismos argumentos.
Como era de esperarse, los demandantes se opusieron a lo solicitado. En lo pertinente, justificaron los $13,000 otorgádoles a Román aduciendo que éstos surgían del Informe de Conferencia con Antelación al Juicio como enmienda a las alegaciones. Según los demandantes, los $8,000 mencionados en el testimonio de Román habían sido el resultado de una oferta de transacción que jamás fue aceptada y que, por consiguiente, se retiró.
En cuanto a las cantidades concedidas a Raúl Ortiz y Asociados, la oposición argumentó que aunque el documento que alegadamente fundamentaba la acreencia no fue admitido en evidencia, el testimonio oral de Ortiz —creído por el foro de instancia— era tan válido como la prueba documental, por lo que su acreencia y el monto de la deuda habían quedado probados.
Examinados los escritos, como hemos señalado, el foro de instancia dictó sentencia enmendada el 17 de enero de 1997, notificada copia de su archivo en autos el 23 de enero de 1997. Esta se limitó a clarificar que donde la sentencia original leyera Víctor Raimundí Miranda o Víctor Raimundí Construction debía entenderse Víctor Raimundí Construction y Mantenimiento Industrial. Clarificó que Víctor Raimundí Miranda y Herminia Collazo Rivera, por sí y en representación de la Sociedad *959 de Bienes Gananciales compuesta por ambos, le eran solidariamente responsables a Royal Insurance conforme a lo determinado en la sentencia inicial. También les ordenó satisfacer a Royal Insurance $7,547.00 por concepto de honorarios de abogado que habían sido pactados en el contrato de fianza.
Inconforme, con la sentencia, por su parte, Víctor Raimundí Construction presentó recurso de apelación el 21 de febrero de 1997. Señaló que el Tribunal de Primera Instancia había errado: 1) al declarar no ha lugar su solicitud de inclusión como partes indispensables y necesarias, a General Builders, Express Equipment, a su representante Roberto Torres Amaro, Plaza Guayama, S.E. y sus socios, los ingenieros César y Marcos Vázquez Navarro; y 2) haber cometido un error manifiesto en la apreciación de la prueba.
Por su parte, el 24 de febrero de 1997, o sea, tres días más tarde, Royal Insurance, también inconforme, presentó su apelación. Señaló que el foro de instancia había errado: 1) manifiestamente, al conceder a los demandantes sumas de dinero que no habían sido sustentadas por la prueba que fue admitida en evidencia, lo que no representa el balance más racional, justiciero y jurídico de la totalidad de la prueba presentada; y 2) al conceder una partida de honorarios de abogado.
ni
Examinaremos primeramente el primer señalamiento de error de Victor Raimundí Construction relacionado a la figura de parte indispensable. Una parte indispensable es "... aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio". Fuentes v. Tribl. de Distrito, 73 D.P.R. 959, 981 (1952). Nuestra doctrina en cuanto a la inclusión en un pleito de partes indispensables persigue impedir que éstas sean privadas de su propiedad sin un debido proceso de ley, o sea, que sus derechos y obligaciones no sean determinados mediante un procedimiento en su ausencia. Cepeda v. García, 93 J.T.S. 20, a la pág. 10395.
Esta finalidad protectora se recoge en la Regla 16.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16.1, que lee como sigue:

"Las personas que tuviesen un intei'és común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada".

En Hernández Agosto v. López Nieves, 114 D.P.R. 601, 607, 611 (1983), el Tribunal Supremo concluyó, que el"interés común" al que se refiere la Regla no significa cualquier interés en el pleito, sino un interés de tal naturaleza que se vea afectado, de forma real e inmediata, por el decreto que eventualmente sea emitido. De ser indispensable, una parte tiene que ser traída al pleito. De lo contrario, se violentaría su derecho a un debido procedimiento de ley. Hernández Colón, Derecho Procesal Civil, San Juan, Michie, 1997, pág. 115.
Contrario a lo que sucede con las partes indispensables, cuando se trata de una parte meramente necesaria, la controversia se puede adjudicar en su ausencia sin que sus derechos se vean afectados. No obstante, esa parte necesaria tiene un interés en el pleito y debe ser unida para que se pueda resolver toda la controversia.
La Regla 16.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 16.2, permite la acumulación de partes no indispensables, como lo son las partes necesarias, si mediante ello se le concedería un remedio completo a aquellos que ya sean partes en el pleito. No obstante, de no ser acumulados, las obligaciones de esa parte necesaria podrían adjudicarse mediante una acción separada. Hernández Colón, supra, a la pág. 111.
Razonamos que General Builders, Plaza Guayama, S.E. y los ingenieros César y Marcos Vázquez Navarro no eran partes indispensables. Las deudas reclamadas en instancia correspondían a servicios contratados estrictamente entre los demandantes y V.R.C.M.I.; los derechos de General Builders, Plaza Guayama, S.E. y los ingenieros no se verían afectados de forma real e inmediata por la adjudicación de instancia. Efectivamente, el foro de instancia no les responsabilizó de forma alguna.
*960 Al contratar General Builders con V.R.C.M.I., esta ultima estuvo representada por su Presidente, Raimundí, y su vicepresidente, Torres Amaro. Aunque en el contrato se expresó que V.R.C.M.I. era una corporación, de la transcripción del testimonio de Raimundí surge que ello no es cierto. No obstante, Raimundí y Torres Amaro acordaron poner en común sus bienes e industria para desempeñarse en una empresa específica y partir entre sí las ganancias obtenidas a través de la misma. En otras palabras, constituyeron una sociedad particular que contrató con General Builders bajo el nombre de V.R.C.M.I.
Mediante su contrato con General Builders, Y.R.C.M.I. se comprometió, entre otras cosas, a proveer todos los materiales, mano de obra, equipo e ingeniería necesarios para la labor. Acordaron que la adquisición de y subsiguiente remuneración por dichos elementos sería responsabilidad de V.R.C.M.I., no de General Builders Construction Corp. Esta última se obligó a remunerar solamente la labor de V.R.C.M.I. y ello mediante un precio alzado.
Surge de la transcripción del testimonio de Raimundí que fue Torres Amaro quien contrató con Román y Raúl Ortiz y Asociados para que éstos les arrendaran algunos de los camiones necesarios para el movimiento de tierra. Surge también que ello se hizo en común acuerdo con Raimundí. Véase en lo pertinente, parte del interrogatorio directo efectuado por el Ledo. Santiago Rodríguez a su representado Víctor Raimundí Miranda, transcripción de la vista, páginas 137-138:

"Ledo. Santiago Rodríguez: Don José [Román], ¿trabajó en ese proyecto? ¿Si? ¿0 no?

Sr. Raimundí: Sí.

Ledo. Santiago Rodríguez: ¿Y usted lo vio trabajando allí?

Sr. Raimundí: ¡Claro!

Ledo. Santiago Rodríguez: ¿Qué relación, si alguna, tenía don José Manuel Román Ruiz con don Roberto [Torres Amaro J para que él pudiera trabajar allí? '

Sr. Raimundí: Eran muy buenos amigos, supuestamente de toda la vida, aquí en Guayama. '

Ledo. Santiago Rodríguez: ¿Quién contrató, si usted sabe, a José Manuel Román Ruiz para trabajar?

Sr. Raimundí: El señor Roberto Torres Amaro, que fue el que habló con él. Y me dijo, dámele trabajo a este señor, y ponlo aquí a cambiar las gomas. Y [el] tró de él, se lo pones a trabajar". Y no tenía gomas y le... le cedió ocho (8) gomas.

Sr. Raimundí:... Y un día, pues vimos el señor Raúl Ortiz con Roberto Torres Amaro, que él sí era de aquí de Guayama. Y me dijo, "Vamos a poner unos troces de Raúl a trabajar aquí, por una deuda que el me debe, ... ["[El va a poner tres camiones (3)... tres (3) camiones. Le vas a pagar a los choferes. Y le vamos a echar el [diesel] ["]... ["] le das dos mil (2,000) dólares. No le des más ["]."

Al contratar el arrendamiento de camiones con Román y con Raúl Ortiz y Asociados, Torres Amaro y Raimundí, obraron en conjunto y en carácter de subcontratistas del proyecto. V.R.C.M.I. y, por consiguiente, los señores Raimundí y Torres Amaro, son los responsables ante Román y Raúl Ortiz y Asociados.
General Builders y Plaza Guayama, S.E. se verían obligadas a responderle a los arrendadores, pero solamente hasta aquellas sumas que le adeudaran a V.R.C.M.I. si a ésta se le hiciera imposible pagar por el arrendamiento de los camiones. Esa posibilidad no constituye el daño real e inmediato que contempla la doctrina sobre las partes indispensables.
Debemos examinar ahora si Express Equipment y Torres Amaro son partes indispensables o necesarias. Del récord ante nosotros surge que Torres Amaro empleó equipos de Express Equipment, compañía de la cual era dueño, en el proyecto de Plaza Guayama. Express Equipment no contrató con *961 Plaza Guayama, S.E., ni con General Builders, ni con Román o Raúl Ortiz y Asociados. No obstante, al contratar con Ortiz, Torres Amaro le hizo entender a éste que Express Equipment era la subcontratista encargada del movimiento de tierra y que era con ésta quien contrataba. Esto se hace evidente, ya que acordaron que parte de las labores realizadas por los camiones de Ortiz compensarían una deuda que otra de sus compañías, Raúl Ortiz Leandry Construction, tenía con Express Equipment.
Efectivamente, la factura que intentó presentar como prueba de la deuda de V.R.C.M.I. estaba dirigida a Express Equipment y acreditaba las sumas que Raúl Ortiz Leandry Construction le debía a Express Equipment.
La deuda de Raúl Ortiz Leandry Construction para con Express Equipment no es pertinente en una acción de cobro de dinero por arrendamiento de camiones a V.R.C.M.I. para el uso de ésta en el proyecto de Plaza Guayama Mall. La deuda de Raúl Ortiz Leandry Construction le debe ser cobrada por Express Equipment en un pleito separado. Por lo tanto, ese crédito no le corresponde a V.R.C.M.I. Al no operar la compensación a su favor, los derechos afectados de forma real e inmediata son los de V.R.C.M.I.; ésta se vería obligada a responder por el total adeudado a Raúl Ortiz y Asociados. Por ende, Express Equipment no es ni parte indispensable ni parte necesaria en la presente acción.
Torres Amaro tampoco es una parte indispensable. La responsabilidad de V.R.C.M.I. para con los obreros, suplidores y materialistas es una responsabilidad conjunta de Raimundí y Torres Amaro. No obstante, los derechos e intereses de éste no se afectaron de forma alguna por el dictamen del foro de instancia. Los derechos e intereses que quedaron directamente afectados fueron los de Raimundí y los de Royal Insurance.
Por entender que no procedía la acumulación indispensable, concurrimos con la decisión del Tribunal de Primera Instancia que denegó la inclusión de partes indispensables y necesarias. No tenemos la más mínima duda de que Torres Amaro le es responsable a los demandantes y a los demandados y terceros demandados. Procedía instar demanda contra tercero contra él, lo que lamentablemente no se hizo. El primer señalamiento de error levantado por Víctor Raimundí Construction no fue cometido.
Contemplemos ahora otro de los errores señalados, por ambos apelantes, es decir, el alegado error manifiesto del foro de instancia en la apreciación de la prueba. Nos señalan los apelantes que el foro de instancia erró manifiestamente en su apreciación de la prueba al concederle a los demandantes-apelados sumas de dinero que no fueron sustentadas por la prueba admitida en evidencia. Entendemos que, efectivamente, se cometió el error señalado, por no haber dicho foro realizado un balance adecuado de la prueba que le fuera presentada. Veamos.
En cuanto a acciones de cobro de dinero se refiere, nuestro Tribunal Supremo señaló, en General Electric v. Concessionaires, Inc., 118 D.P.R. 32, 43 (1986), que los demandantes sólo tienen que probar la existencia de una deuda válida, que la misma no se ha pagado, que ellos son los acreedores y los demandados sus deudores. Los demandantes tienen el peso de la prueba por razón de ser ellos los que resultarían vencidos de no presentar evidencia. Regla 10(A) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(A).
Román no presentó prueba documental alguna que acreditara su reclamación. Por lo tanto, la única prueba que el foro de instancia tuvo ante sí, ftie su testimonio vertido en la vista celebrada.
De la transcripción de la vista en su fondo surge que el testimonio de Román fue uno sumamente confuso. No se acordaba de las fechas en que había brindado sus servicios y no podía precisar cuánto exactamente se le debía. En su demanda reclamó $8,000 por trabajos realizados en el centro comercial de Guayama, más $2,000 por daños y perjuicios por no haberle pagado a sus acreedores, como consecuencia de Víctor Raimundí Construction no pagarle por su trabajo y $3,000 en honorarios de abogado; en el informe de conferencia con antelación al juicio reclamó $13,000; durante el juicio expresó que se le debían "como” $25,000, pero que había llegado a un acuerdo con Raimundí para que se le pagaran $14,000 y otro acuerdo para que se le pagaran $8,000.
Fue durante el testimonio de Raimundí que surgió que a Román se le debían $8,000. Se admitió *962 como prueba en la vista, que de dicha cantidad a Román se le pagaron $2,000 mediante el "Official Check No. 1-062-123652" adquirido por Víctor Raimundí el 12 de julio de 1992, en el Banco Popular de Puerto Rico. Por lo tanto, procede reducir de $13,000 a $6,000 la suma concedida a Román.
Veamos ahora la reclamación de Ortiz (Raúl Ortiz Leandry). Mediante su testimonio éste intentó que el foro de instancia admitiera en evidencia un documento o "Factura" de fecha 29 de marzo de 1993. Con ese documento, dirigido a Express Equipment, persona que no era parte en el pleito, se pretendía establecer la existencia de la deuda de Víctor Raimundí para con Ortiz. Con la oportuna objeción del
Ledo. Santiago Rodríguez esa factura no fue admitida como prueba. No obstante, el foro de instancia concluyó en su dictamen en su determinación de hechos número ocho (8) que "Raúl Ortiz y Asociados, representada por el Sr. Raúl Ortiz, hizo trabajos por valor de $36,000.00 como producto de acarreo de tierra en el proyecto Plaza Guayama".
Sabido es que en un caso de cobro de dinero el demandante tiene el peso de la prueba. El testimonio de Ortiz para acreditar la existencia de la deuda, como hemos mencionado, se basó en el contenido de una factura que no fue admitida en evidencia por el foro de instancia. Dicha factura fue preparada por una hermana de Ortiz basada en información que éste le proveía. Al ser cuestionado sobre discrepancias en las cantidades facturadas, Ortiz expresó no recordar el porqué de las mismas. Para complicar la situación, la factura estaba dirigida a Express Equipment y al total a pagarse se le restaba una suma adeudada a Express Equipment por Raúl Ortiz Leandry Construction, otra compañía de Ortiz. En fin, la prueba presentada por Ortiz no cumple con los requisitos para establecer su reclamación, es decir, no probó el monto adeudádole o que los demandados fueran sus deudores. Por ello procede dejar sin efecto la partida de $28,795 concedida por el foro de instancia a Raúl Ortiz y Asociados.
Reconocemos la existencia de la bien establecida norma de abstención que limita la intervención de un foro apelativo en la apreciación de la prueba realizada por el tribunal de instancia. Esta opera siempre y cuando no se demuestre que dicho foro actuó con pasión, prejuicio, parcialidad o error manifiesto. La apreciación equivocada de la prueba no es inmune a la capacidad revisora de este tribunal. Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987). Entendemos que el foro de instancia cometió error manifiesto en su apreciación de la prueba, por lo que entendemos procedente modificar y revocar las partidas concedidas en la forma mencionada.
Finalmente, consideramos si erró el foro de instancia al imponerle honorarios de abogado a Royal Insurance. En referencia a esa figura, la Regla 44.1 (d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. m, R. 44.1 (d), según enmendada, lee como sigue:

"(d) Honorarios de abogado. En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta".

Esta Regla es clara. Cuando la parte ha sido temeraria o frívola, el tribunal deberá imponerle en su sentencia una suma razonable por concepto de honorarios de abogado. Raoca Plumbing v. Trans World, 114 D.P.R. 464, 468 (1983); Montañez Cruz v. Metropolitan Cons. Corp., 87 D.P.R. 38, 40 (1962). La acción que amerita la condena de honorarios de abogado es cualquiera que haga necesaria un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. El objetivo principal de la norma de imponer el pago de honorarios de abogado es castigar a aquel litigante perdidoso que, por su terquedad, obstinación, frivolidad o insistencia —en actitud desprovista de fundamentos— obliga a la parte contraria a asumir innecesariamente las molestias, gastos e inconvenientes de un pleito. Con este mecanismo los tribunales protegen a los litigantes honestos de imposiciones, dilaciones y gastos innecesarios. Santos Bermúdez v. Texaco P.R., Inc., 123 D.P.R. 351 (1989).
Por otro lado, la temeridad se ha definido como la conducta obstinada, frívola y desprovista de fundamentos que obliga a la parte contraria a asumir las molestias, gastos e inconveniencias de un pleito. González v. Commonwealth Ins., _ D.P.R. _ (1996); 96 J.T.S. 63, a la pág. 1042. Implica *963 una "... [ajctitud de quien afirma hechos o se conduce sin fundamento o motivo, con conciencia de la propia sinrazón, I. Santos Bermúdez v. Texaco P.R., Inc., a la pág. 355 citando a E.J. Couture, Vocabulario Jurídico, Buenos Aires, Eds. Depalma, 1976, págs. 556-557. Entre los criterios a considerarse al imponer el pago de honorarios de abogado se encuentran la naturaleza del litigio, las cuestiones de derecho envueltas, el tiempo invertido, los esfuerzos y estudios profesionales que se hayan tenido que desplegar y la habilidad y reputación de los abogados envueltos." Corpak, Art Printing v. Ramallo Brothers, 125 D.P.R. 724, 738 (1990).
Examinado el récord ante nuestra consideración, resolvemos que Royal Insurance no procedió con temeridad o frivolidad, por lo que no procede la imposición de honorarios de abogado. Las discrepancias en cuanto a los hechos en controversia, quién contrató con quién, cuánto tiempo trabajaron los demandantes en el proyecto, cuánto se les debía y quién le debía, ameritaron que Royal Insurance litigara el caso en defensa de sus intereses. Considerando lo confusas y mal fundamentadas reclamaciones de los demandantes-apelados, no era razonable esperar que Royal Insurance se cruzara de brazos y se allanara a las mismas.
En mérito de lo expuesto, modificamos la sentencia emitida por el foro de instancia a los efectos de reducir la suma otorgada al co-demandante aquí apelado, José Manuel Román. Ruiz a $6,000, eliminar la partida de $28,795 concedida al co-demandante aquí apelado, Raúl Ortiz y Asociados y eliminar la partida de $1,000 honorarios de abogado impuésíale a Royal Insurance.
Lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General